UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| BILLY CAUDILL, | ) ) ) ) |
| Plaintiff, | ) ) Civil No. 14-32-ART ) |
| v. | ) ) **MEMORANDUM OPINION AND** |
| CAVALRY SPV I, LLC, et al., | ) **ORDER** ) ) |
| Defendants. | ) ) |

\*\*\* \*\*\* \*\*\* \*\*\*

Contracts, by their nature, sometimes require and other times foreclose a desired course of action. In doing so, they reduce uncertainty for both parties, creating a predictable framework in which to pursue common interests. If one party could throw off such constraints at will, uncertainty would reign, rendering the contract as ineffectual as a modern-day challenge to duel.[1] Fortunately, contracts still have consequences.

Defendants Cavalry SPV I ("SPV") and Cavalry Portfolio Services ("CPS") have asked the Court to enforce the arbitration clause of a contract between GE Capital Retail Bank ("the Bank") and Billy Caudill. R. 18. Caudill seeks to avoid arbitration. R. 19. However, because Caudill entered into a valid arbitration agreement and his claims fall within the scope of that agreement, the Court will grant the motion to compel arbitration and stay Caudill's suit.

---

[1] AimArchives, *Sen. Zell Miller Challenges Chris Matthews to a Duel* (Published on July 24, 2012) ("I wish we lived in the day where you could challenge a person to a duel."), *available at https://www.youtube.com/watch?v=SXpuEFansic*.

# BACKGROUND

Like many Americans, Billy Caudill struggled financially in the wake of the 2008 economic downturn. R. 1 ¶ 1. During that time, he defaulted on a credit card issued by the Bank. *See id.* ¶ 11; R. 18-1 at 21. By May of 2012, SPV had purchased Caudill's debt from the Bank. R. 1 ¶ 22; R. 18-1 at 21 (certifying that the Bank's collections operations representative, David Stransky, had reviewed Caudill's account, which had been "sold to [SPV]"). According to SPV's authorized representative, Terry Rivera, SPV then assigned the debt to CPS for collection. R. 18-1 at 16 ("SPV assigned the Caudill Account to CPS, including an assignment of its servicing, collection, and enforcement rights."). A letter from CPS to Caudill puts the transfer in slightly different terms: "SPV . . . has referred your account to [CPS] for servicing." R. 19-2 at 1. Caudill claims that he owed a total of $1,294.00 at the time of the debt transfer and that SPV and CPS charged him an additional $1,452.00 in interest between May 2012 and December 2013. R. 1 ¶¶ 21–26. Rather than pay the full amount, Caudill filed nine claims against SPV and CPS, alleging that they charged exorbitant interest, and violated both the credit card agreement ("the Agreement") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"). R. 1 ¶¶ 28–29.

The defendants responded to Caudill's suit by moving to compel arbitration, citing a provision in the Agreement: "Any past, present or future legal dispute or claim of any kind, including statutory and common law claims and claims for equitable relief . . . will be resolved by binding arbitration if either you, we, or [the credit card company] elects to arbitrate." R. 18-1 at 1, 24. The Agreement defines "we" as "[the Bank] and all of its respective parents, subsidiaries, affiliates, predecessors, successors, assigns, employees, officers and directors." R. 19-3 at 5. The Agreement then expressly provided that the Bank

had the right to "sell, assign or transfer any of [its] rights or obligations under [the] Agreement." *Id.* at 6.

The defendants assert that (1) SPV assumed the Bank's contractual rights under the arbitration clause when it purchased Caudill's account from the Bank, R. 20 at 4–5, and (2) CPS acquired contractual rights under the arbitration clause when SPV assigned Caudill's account to CPS for collection. *Id.* at 9–11. As a result, they argue, the Court must enforce the arbitration provision pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* R. 18-1 at 1. Caudill contends that because SPV and CPS were not parties to the original Agreement they cannot enforce the arbitration clause. R. 19.

## DISCUSSION

The Federal Arbitration Act of 1925 ("FAA") enshrines in the United States Code "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). *See also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001) ("[T]he FAA compels judicial enforcement of a wide range of written arbitration agreements."). Under Section 2 of the FAA, an arbitration provision in a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When a party violates an agreement to arbitrate by instead bringing claims in a civil suit, the aggrieved party may ask a federal court to compel arbitration if there is an independent basis for jurisdiction. 9 U.S.C. § 4. To defeat a motion to compel arbitration, "the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). The standard to defeat a motion to

compel arbitration "mirrors that required to withstand summary judgment in a civil suit." *Id.* (citing *Doctor's Assocs. v. Distajo,* 107 F.3d 126, 129–30 (2d Cir. 1997)).

To determine whether there is a genuine issue about whether the plaintiffs violated a valid agreement to arbitrate, the Court applies a two-prong test inquiring whether (1) there is a valid agreement to arbitrate between the parties and (2) the specific dispute falls within the substantive scope of that agreement. *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). State contract law governs the first prong—"the validity, revocability, and enforceability" of the contract itself. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996) (internal quotation marks omitted). Courts then examine the second prong in light of a strong "presumption of arbitrability." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010). "[A]ny ambiguities . . . should be resolved in favor of arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). Where claims are premised upon a federal statute, that presumption shifts the burden to the party seeking to avoid arbitration, requiring it to demonstrate that "Congress intended to preclude arbitration of the statutory claims at issue" or that the parties did not intend to arbitrate statutory claims. *Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79, 91–92 (2000).

For this Court, and for SPV, this inquiry covers familiar ground.[2] *See Martin v. Cavalry SPV I, LLC*, Civil No. 13-88-GFVT, 2014 WL 1338702 (E.D. Ky. Mar. 31, 2014). Here, Caudill argues under the first prong that no valid arbitration agreement exists between the parties. Under the second prong, he argues that, even if a valid arbitration clause exists,

---

[2] Indeed, this Court's previous foray into this inquiry involved a challenged arbitration clause in a credit card agreement formed with the same bank, enforced by SPV, and brought by the same plaintiff's counsel.

4

his claims fall outside the scope of the Agreement. Because Caudill fails to demonstrate a genuine dispute of a material fact under either prong, both arguments fail.

**I.      Whether A Valid Agreement Exists Between the Parties.**

Caudill makes numerous arguments against the existence of a valid arbitration agreement between himself and the defendants. He claims that the defendants fail to establish that SPV purchased Caudill's debt from the Bank. R. 19 at 5. Even if SPV did purchase Caudill's debt, he argues, SPV did not properly document the assignment of the debt from SPV to CPS. *Id.* at 3. He argues that the transfer of debt from the Bank to SPV included receivables only, not any rights under the arbitration clause. *Id.* at 15. Finally, Caudill alleges a genuine dispute as to whether SPV assigned his entire account to CPS, depriving SPV of any rights under the Agreement. *Id.* at 4–5. For the following reasons, each argument is unpersuasive.

**A. The Defendants Can Establish that the Bank Sold Caudill's Debt to SPV.**

Caudill asserts that there is no proof that the Bank transferred Caudill's debt to SPV. This is true, he argues, because the bill of sale from the Bank does not mention Caudill's name or account number and accordingly fails to establish a transfer of his debt to SPV. R. 19 at 4. As a result, SPV cannot have an agreement with Caudill or the right to make him arbitrate his claim. "To prevail," Caudill writes, "a plaintiff/creditor must provide . . . 'a bill of sale listing the name and account number of the defendant.'" *Id.* (quoting *Bruner v. Discover Bank*, 360 S.W.3d 774, 778 (Ky. Ct. App. 2012)).

But *Bruner* does not apply. *Bruner* describes what a plaintiff must prove to prevail on a summary judgment motion to collect a debt. *Id.* Here, Caudill challenges the distinct point of whether the Bank assigned the account to SPV and, with it, the arbitration clause. *See id.*

at 2–4. Even if *Bruner* did apply, it does not support Caudill's argument. *Bruner* holds that "an assignment from the demonstrated owner of the debt for the purpose of collection . . . serve[s] virtually the same purpose as a bill of sale." *Bruner*, 360 S.W.3d at 778. Here, the *affidavit* of sale satisfies this requirement. David Stransky, the Bank's Collections Operations Representative, testified in writing and under oath that "[t]he amount owed on the account on 5/19/2012, $1823.23 was sold to Cavalry SPV I LLC." R. 18-1 at 21. To the extent that Caudill fails to explain why this affidavit does not "serve virtually the same purpose as a bill of sale," *Bruner*, 360 S.W.3d at 778, he waives the argument by failing to develop it. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

### B. SPV Assigned Caudill's Debt to CPS.

Caudill asserts that the defendants fail to demonstrate the "alleged assignment from [SPV] to CPS." R. 19 at 3. But Exhibit 1 to the defendants' motion, a Business Records Declaration from Terry Rivera, does just that. R. 18-1 at 15–16. It explicitly states that "SPV assigned the Caudill Account to CPS, including an assignment of its servicing, collection, and enforcement rights." *Id.* at 16. Additionally, Caudill admits in his complaint the very information he disputes in his response to the motion to compel arbitration: Caudill's complaint lists "May 14, 2012 as the date that [SPV] purchased Mr. [Caudill's] credit card debt and the date that the debt was assigned to CPS for collection."). R. 1 at 3.

Caudill tries to undermine Rivera's declaration in three ways, first under the business records exception, second under the best evidence rule, and finally under "the specter of robo-signing." First, he argues that Rivera is not qualified to introduce the Agreement

6

pursuant to the business records exception to the hearsay rule because he[3] never claims to have personal "knowledge of the procedures under which the [Agreement was] created." R. 19 at 8 (quoting *United States v. Petroff-Kline*, 557 F.3d 285, 292 (6th Cir. 2009)). Rivera's personal knowledge, however, is not required. Debt collectors routinely rely upon documents that they have "integrated into [their] records" even when they do "not have personal knowledge" of or "personally participate in [their] creation, or even know who actually recorded the information." *Brawner v. Allstate Indem. Co.*, 591 F.3d 984, 987 (8th Cir. 2010) (quoting *Resolution Trust Corp. v. Eason*, 17 F.3d 1126, 1132 (8th Cir. 1994)).

Caudill further argues that Rivera's declaration failed to establish that the Agreement was made or kept "in the course of regularly conducted business activity *before its transfer to CPS*." R. 19 at 8 (emphasis added). Here, Caudill is simply wrong. According to SPV's uncontroverted declaration, it integrated the Bank's records into its own as soon as it purchased the account. R. 18-1 at 16. Rivera avers that, "*upon the sale of the Account to SPV*," the related "business records of [the Bank] became, and are now fully integrated with, the business records of SPV." *Id.* (emphasis added). SPV could not possibly have transferred the account to CPS before it had even bought the account. Rivera also avers that he is the custodian of the records and has verified their accuracy and applicability to Caudill's account. *Id.* Once an entity integrates a third party's document into its records and relies upon it, the document becomes "qualified for admission under the business records exception." *United States v. Hollie*, No. 93-6021, 25 F.3d 1051 (6th Cir. May 16, 1994) (unpublished) (citing *United States v. Doe*, 960 F.2d 221 (1st Cir. 1992)).

---

[3]Though Caudill's counsel refers to Terry Rivera as "she" throughout his response, *e.g.*, R. 19 at 5–6, the Court defers to the characterization of the party that submitted Terry Rivera's declaration. *See* R. 20 at 2–3 (referring to "Mr. Rivera").

Second, Caudill alleges "in a perfunctory manner," *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997), that Rivera's declaration "is clearly not the best evidence of the alleged assignment." R. 19 at 3. But this allegation is "unaccompanied by [any] effort at developed argumentation" and is "deemed waived" as a result. *McPherson*, 125 F.3d 989 at 995–96. The Court will not assume Caudill's duty to put "flesh on [the argument's] bones." *Id.*

As a last-ditch effort to attack Rivera's declaration, Caudill alleges that the "specter of robo-signing" affidavits without reviewing them first is "rampant" in the debt-collection industry. R. 19 at 12. This practice, he argues, "undermines" the Rivera declaration, even though "none of this is to say that [SPV] or CPS are guilty of robo-signing." *Id.* If there is nothing to say that robo-signing arises in this case, then the possibility that someone is practicing it somewhere else does not undermine Rivera's declaration.

### C. The Language of the Agreement and the Doctrine of Equitable Estoppel Empower SPV and CPS to Invoke the Arbitration Clause.

Next, Caudill argues that SPV did not purchase from the Bank the contractual right to compel arbitration but, rather, just the "receivables,"—the right to collect on the debt. R. 19 at 15. Caudill relies on a single district court in another circuit for the proposition that "receivables" means the "amount owed" and not other contract provisions like an arbitration clause. *See Munoz v. Pipestone Fin., LLC*, 397 F. Supp. 2d 1129, 1132 (D. Minn. 2005). But Kentucky contract law has firmly established that, in the absence of ambiguous language, a contract should be interpreted strictly according to its terms. *Wehr Constructors, Inc. v. Assurance Co. of Am.*, 384 S.W.3d 680, 687 (Ky. 2012). And here, Caudill does not

allege that the terms of the Agreement are ambiguous. The Court must therefore give weight to the Agreement's plain meaning.

Taken together, the terms of the Agreement empower SPV and CPS to enforce the arbitration clause against Caudill. The Agreement provided that "any . . . claim of any kind . . . that relates in any way to your account or your relationship with us will be resolved by binding arbitration if either you, we, or [the credit card company] elects to arbitrate." R. 19-3 at 5. The Agreement then defines "we" as "GE Money Bank and *all of its* respective parents, subsidiaries, affiliates, predecessors, *successors*, *assigns*, employees, officers and directors." *Id.* (emphasis added). The Agreement makes clear that "[w]e may sell, assign or transfer any of our rights or obligations under this Agreement or your Account, including our rights to payments, without prior notice to you." *Id.* at 6. The terms of the Agreement, strictly applied, are clear: the Bank can assign away any of the rights under the Agreement; the assignee or successor can then "elect to arbitrate" any claim related to the Agreement. Even if Caudill is right that the Bank only transferred the account receivables to SPV, the clear terms of the Agreement empower "all . . . successors [and] assigns" of "any . . . right" to elect to arbitrate "any . . . legal dispute or claim of any kind." *See* R. 19-3 at 5, 6. Here, all means all, and any means any.

Regardless, Caudill is estopped from arguing that the defendants cannot invoke the arbitration clause against him, even if they did not sign the original agreement. Why? Because a plaintiff who seeks a benefit of a contract in a lawsuit cannot escape being bound by that contract's other provisions—including its arbitration provision. *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003). *See also Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381–82 (5th Cir. 2008) ("When the agreement's terms do not expressly state

whether a signatory may be compelled to arbitrate with a nonsignatory, we have drawn on . . . [the doctrine of] equitable estoppel[] to determine a nonsignatory's rights and duties under an arbitration clause."); *Hagan v. Greenpoint Credit Corp.*, No. Civ.A.07-17-KKC, 2007 WL 2258866 at *8 (E.D. Ky. Aug. 3, 2007) ("When each of a signatory's claims against a nonsignatory 'makes reference to' or 'presumes the existence of' the written agreement, the signatory's claims 'arise[] out of and relate[] directly to the [written] agreement,' and arbitration is appropriate.").

Here, Caudill relies on the Agreement in all nine of his claims, alleging that the defendants exceeded their "contractual [and] statutory right[s]" and assessed interest or fees they "had no legal right to collect" under the Agreement. R. 1 at 3–4. (citing 15 U.S.C. § 1692f(1) (prohibiting the collection of interest or fees that were not "expressly authorized *by the agreement*." (emphasis added)). In short, because Caudill's claims rely on and are intertwined with the Agreement, he is estopped from dodging the arbitration clause, even against non-signatories. There are various additional arguments the parties could have made. Because they did not, however, the Court will not address them either.

### D. Whether the Parties Assigned the Entire Account or Just the Receivables is Immaterial.

Finally, Caudill claims that Rivera's declaration contradicts a letter from CPS to Caudill. R. 19 at 3–4. The Rivera declaration says: "SPV *assigned* the Caudill Account to CPS, including an assignment of its servicing, collection, and enforcement rights." R. 18-1 at 16 (emphasis added). The CPS letter to Caudill, however, says that SPV "*referred* [Caudill's] account to [CPS] for servicing." R. 19-2 at 1 (emphasis added). Caudill asserts that the discrepancy reveals a genuinely disputed material fact: SPV either assigned the

entire Caudill account to CPS or merely referred it for servicing. R. 19 at 4. The factual dispute is material, Caudill argues, because a full assignment of the account to CPS would deprive SPV of the ability to compel arbitration under the assigned Agreement. *Id.* Caudill cites no legal authority to support this claim.

But equitable estoppel permits both defendants to invoke the arbitration clause in the Agreement because it forms the basis of Caudill's claims against them. *See* Section I.C, *supra*. Accordingly, whether SPV conveyed full or merely partial rights to CPS is not material to the right of both parties to invoke the arbitration clause under the Agreement. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("As to materiality, . . . .[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

## II. Whether Caudill's Claims Fall Within the Scope of the Credit Card Agreement.

Caudill argues that his claims are exempt from binding arbitration because they do not "arise out of" the Agreement or "relate to" his relationship with the defendants. R. 19 at 21. As discussed above, there is no basis for that argument. Caudill argues that the accrual of interest on his account has nothing to do with the account, R. 19 at 20–21, and that the defendants' alleged violations of the Agreement have nothing to do with the Agreement, R. 1 at 3–4. But merely saying so does not make it so. R. 19-3 at 5 ("[A]ny . . . claim of any kind . . . that relates in any way to your account or your relationship with us will be resolved by binding arbitration if either you, we, or [the credit card company] elects to arbitrate."). His arguments are conclusory and unpersuasive.

11

**III.    Whether SPV Waived Its Right to Compel Arbitration.**

Lastly, Caudill alleges that SPV waived its right to compel arbitration by "acting completely inconsistent[ly] with any reliance" on the arbitration clause. R. 19 at 22 (quoting *Highlands Wellmont Health Network v. John Deere Health Plan*, 350 F.3d 568, 573 (6th Cir. 2003)). Caudill argues that SPV's bill of sale "likely . . . includes hundreds of thousands of credit card debts transferred as part of an electronic file." R. 19 at 22. Caudill then states, without any support, that SPV "routinely brings suit in Kentucky state courts to collect these and other debts from Kentucky consumers." R. 19 at 22. Caudill provides a website revealing that SPV "has filed approximately 580 cases in Kentucky's three most populous counties." *Id.* But Caudill alleges no connection between those cases and this case. He cites no authority to support his apparent view that filing *unrelated* suits in Kentucky state court is "completely inconsistent with any reliance on an arbitration agreement" to the point of causing "actual prejudice." *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012). Exercising a right to sue in one case does not waive a contractual provision requiring arbitration in another. To establish such a rule would contravene "the federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24.

## CONCLUSION

Caudill entered into a valid contract with the Bank. That contract includes a valid arbitration clause expressed in broad terms, with clear provision for assignment to subsequent parties. The Bank sold the entire account to SPV. SPV, in turn, assigned the account—either in whole or in part—to CPS. In either case, SPV and CPS can enforce the clause against Caudill. With federal court unavailable and the dueling grounds no more,

Caudill must, instead, pursue his claims in arbitration. Contracts, after all, still have consequences.

Accordingly, it is **ORDERED** as follows:

(1) The defendants' Amended Motion to Compel Arbitration, R. 18, is **GRANTED**.

(2) Pursuant to 9 U.S.C. § 3, further proceedings in this matter are **STAYED**, pending arbitration.

(3) If Caudill fails to initiate arbitration proceedings within sixty days from the entry of this order, the case will be dismissed with prejudice.

This the 25th day of August, 2014.

Signed By:
*Amul R. Thapar* AT
United States District Judge